**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

_____
                                                    )
**DOROTHY M. PENICK,**                )
                                                    )
    **Plaintiff,**                         )
                                                    )
    **v.**                                      )      **CIVIL NO. 3:08CV549**
                                                    )
**MICHAEL J. ASTRUE,**                )
**Commissioner of Social Security,**    )
                                                    )
    **Defendant.**                      )
_____)


## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C.

§ 636(b)(1)(B) on cross-motions for summary judgment.[1]  Plaintiff, Dorothy M. Penick, seeks

judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner

denying her application for Social Security Disability Benefits (DIB) and Supplemental Security

Income payments (SSI).  The Commissioner's final decision is based on a finding by the

Administrative Law Judge (ALJ) that Plaintiff was not disabled as defined by the Social Security

Act (the Act) and applicable regulations.

For the reasons discussed below, it is the Court's recommendation that Plaintiff's motion

for summary judgment (docket entry no. 14) and motion to remand (docket entry no. 15) be

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C).  In accordance with these rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to the extent necessary to properly analyze the case.

DENIED; that Defendant's motion for summary judgment (docket entry no. 17) be GRANTED;

and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on March 22, 2006, claiming disability due to

high blood pressure, ulcerative colitis, vertigo, and arthritis, with an alleged onset date of

December 19, 2005. (R. at 58, 60.)  The Social Security Administration ("SSA") denied

Plaintiff's claims initially and on reconsideration.[2] (R. at 44-49; 37-38.)  On May 10, 2007,

accompanied by counsel, Plaintiff testified before an ALJ.  (R. at 180-226.)  On May 25, 2007,

the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where

Plaintiff retained the residual functional capacity "to perform her past relevant work, either as

actually performed or as generally performed in the national economy."  (R. at 10-16.)  The

Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision

the final decision of the Commissioner subject to judicial review by this Court.  (R. at 4-6.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by

substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to

determining whether the Commissioner's decision was supported by substantial evidence on the

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA.  20 C.F.R. Part 404, Subpart Q; see also § 404.1503.  Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

record and whether the proper legal standards were applied in evaluating the evidence.  Johnson
v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.
1990).  Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of
relevant evidence a reasonable mind could accept as adequate to support a conclusion.  Craig v.
Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401
(1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the
record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility
determinations, or substitute [its] judgment for that of the Secretary.'"  Mastro v. Apfel, 270 F.3d
171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589).  In considering the decision of the
Commissioner based on the record as a whole, the Court must "'take into account whatever in
the record fairly detracts from its weight.'"  Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th
Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)).  The
Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are
conclusive and must be affirmed.  Perales, 402 U.S. at 390.  While the standard is high, if the
ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has
made an error of law, the district court must reverse the decision.  Coffman v. Bowen, 829 F.2d
514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to
determine if a claimant is eligible for benefits.  20 C.F.R. §§ 416.920, 404.1520; Mastro, 270
F.3d at 177.  The analysis is conducted for the Commissioner by the ALJ, and it is that process
that a court must examine on appeal to determine whether the correct legal standards were

3

applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

return to her past relevant work[4] based on an assessment of the claimant's residual functional

capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the

past." 20 C.F.R. §§ 416.920(e), 404.1520(e).  If such work can be performed, then benefits will

not be awarded.  Id.  However, if the claimant cannot perform her past work, the burden shifts to

the Commissioner at the fifth step to show that, considering the claimant's age, education, work

experience, and RFC, the claimant is capable of performing other work that is available in

significant numbers in the national economy.  20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v.

Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5

(1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The Commissioner can carry his

burden in the final step with the testimony of a VE.  When a VE is called to testify, the ALJ's

function is to pose hypothetical questions that accurately represent the claimant's RFC based on

all evidence on record and a fair description of all the claimant's impairments so that the VE can

offer testimony about any jobs existing in the national economy that the claimant can perform.

Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).  Only when the hypothetical posed represents

*all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or

helpful."  Id.  If the ALJ finds that the claimant is not capable of SGA, then the claimant is found

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved.  20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p.  When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  Id.  (footnote omitted).

to be disabled and is accordingly entitled to benefits.  20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## VI.  ANALYSIS

The ALJ found at step one that although Plaintiff had engaged in employment since the alleged onset of her disability on December 19, 2005, the record did "not support a decision based solely on substantial gainful activity."  (R. at 12.)  In addition, the ALJ found that Plaintiff's receipt of unemployment benefits was "inconsistent with a claim for Social Security disability benefits for which an individual must hold herself out as being unable to perform any substantial gainful activity."  (R. at 12.)  As a result of Plaintiff's employment from 2006-2007, her receipt of unemployment benefits in three quarters of 2006, her medical records and her testimony, the ALJ found that Plaintiff failed to establish that there had been a twelve month continuous period since the alleged onset of her disability that Plaintiff was unable to work.  (R. at 12-13.)  At steps two and three, the ALJ found that Plaintiff had the severe impairments of vertigo, ulcerative colitis, arthritis, and obesity.  (R. at 13.)  However, the ALJ also concluded that such impairments did not preclude Plaintiff from engaging in any SGA for a continuous 12-month period as required to meet the durational requirement for Social Security disability benefits.  (R. at 13.)

Although the ALJ determined that Plaintiff had failed in meeting the durational requirement set forth in the Act, the ALJ continued with his analysis, and determined, alternatively, at step four of the analysis, that Plaintiff was able to perform her past relevant work as a candy packer, or as a clerical assistant.  (R. at 16.)  The ALJ's finding at step four was based on the testimony of a VE, and by comparing Plaintiff's RFC "suggested by the DDS with the physical and mental demands of her past work as a candy packer and a clerical assistant."  (R. at

6

16.)  Because the ALJ determined that Plaintiff was capable of performing her past relevant work, it was unnecessary to pursue the analysis to step five in which the Commissioner would have had the burden to demonstrate that, considering the claimant's age, education, work experience, and RFC, the claimant was capable of performing other work that is available in significant numbers in the national economy.  20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits.  (R. at 16-17.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings.  (Pl.'s Mot. for Summ. J. at 1; Pl.'s Mot. to Remand at 1.)  In support of her position, Plaintiff argues that: (1) the ALJ erred in finding that Plaintiff had engaged in substantial gainful employment from October 2005 through March 2006 precluding her from receiving disability benefits during that time period; (2) the ALJ improperly discounted her credibility without considering the totality of the record; (3) it was improper for the ALJ to only adopt the non-examining physician's assessment of Plaintiff's RFC; and (4) the ALJ did not include all of Plaintiff's limitations in posing the hypothetical question to the VE, and thereby erred in finding that Plaintiff could return to her past relevant work as a candy packer or clerical assistant.  (Pl.'s Mem. in Supp. of Mot. for Summ. J. "Pl.'s Mem." at 15-26.)  Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and should therefore be affirmed.  (Def.'s Mot. in Supp.  Mot. Summ. J. "Def.'s Mem." at 11.)

1.      **The ALJ did not err in considering Plaintiff's work attempts and receipt of unemployment benefits in determining that Plaintiff had failed to establish that she met the durational requirement for receiving benefits under the Act.**

Plaintiff asserts that the ALJ erred in finding that Plaintiff was barred from receiving social security disability benefits because she had tried to work from October 9, 2005 through March 30, 2006, and because she applied for and received unemployment benefits.  (Pl.'s Mem. at 16.)  Specifically, Plaintiff states that the work activities which the ALJ relied on were not substantial gainful activity as defined by the Act; and furthermore, that one of her work attempts qualified as an unsuccessful work attempt and should not be considered for purposes of barring her from receiving disability benefits.  (Pl.'s Mem. at 16-19.)  Furthermore, Plaintiff asserts that the ALJ erred in basing his disability determination on the fact that Plaintiff received unemployment benefits during her alleged disability period.  (Pl.'s Mem. at 20.)

It is clear from a review of the Record that Plaintiff's argument misinterprets the ALJ's conclusions in denying Plaintiff benefits under the Act.  The ALJ's disability determination was based on his conclusions that there was insufficient evidence in the Record to demonstrate that Plaintiff's impairments had prevented her from being able to work for a continuous twelve month period.  (R. at 12-16.)  The Social Security Regulations state that in order for a claimant to be found disabled, they must demonstrate that they have a severe medically determinable physical or mental impairment, or combination of impairments, which meet the duration requirement  outlined in the Regulations.  See 20 C.F.R. § § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The relevant regulation states that:  "unless [a claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."  20 C.F.R. § § 404.1509, 416.905(a).  In determining whether a claimant is able to perform substantial gainful activity, the ALJ is to look at the Record in its

8

entirety to determine whether the claimant's impairments meet such requirements. See 20 C.F.R. § § 404.1512, 404.1529(a), 416.912, 416.929(a).

Here, the ALJ's conclusions that Plaintiff had not met the duration requirement was not based simply on one factor, but a culmination of factors which included her receipt of unemployment benefits, a review of her medical records, her work activity during the relevant disability period, and her testimony as to her capabilities and daily activities.  (R. at 12-16.) Plaintiff asserts that the ALJ erred in classifying her work during the relevant disability period (December 19, 2005 through May 25, 2007, the date of the ALJ Opinion) as SGA, and that reliance on the classification in his determination that she had not met the duration requirement was therefore improper.  (Pl.'s Mem. at 16-19.)  However, in reviewing the ALJ's opinion, it is clear that his classification of Plaintiff's employment as SGA for that period was not dispositive of his conclusion that the Plaintiff had not met the duration requirement.  The ALJ's opinion clearly states: "[t]he claimant has worked since December 19, 2005, her alleged onset date, but the record does not support a decision based solely on substantial gainful activity."  (R. at 12.) The ALJ explains that Plaintiff was "laid off" from her employment, and was not forced to leave due to her impairments, immediately preceding her alleged start date. (R. at 12.) Furthermore, Plaintiff testified that she worked full time at DRS Group of Virginia from October 9, 2006 through March 30, 2007.  (R. at 12, 188.)  Although the ALJ considered such employment as part of his determination, and stated that those circumstances were not indicative of a person who had been totally disabled for the requisite twelve month period, he did not find that the work activity alone was conclusive; rather, he proceeded with his analysis, examining each of Plaintiff's alleged impairments, her medical records, and her testimony as to her daily activities and complaints of continuing pain.  (R. at 13-16.)  Furthermore, even if the ALJ erred in

9

classifying Plaintiff's, self-proclaimed, full-time work at DRS Group of Virginia as substantial gainful activity, the error is harmless, as the ALJ's consideration of the activity, when considered in conjunction with the ALJ's review of the entire Record, would have been proper. See 20 C.F.R. § § 404.1512, 404.1529(a), 416.912, 416.929(a).

Plaintiff additionally argues that the ALJ erred in considering her receipt of unemployment benefits during the relevant period in determining that she did not meet the duration requirement. (Pl.'s Mem. at 20.) Plaintiff states that the ALJ's assertion that Plaintiff was "barred" from social security disability benefits because she applied for unemployment benefits, was improper. (Pl.'s Mem. at 20.) It is true, that the receipt of unemployment benefits "does not in itself prove ability to work"; however, it may be considered as a factor in the ALJ's determination, as "'receipt of unemployment benefits indicates that one is ready and willing to work.'" Lackey v. Celebrezze, 349 F.2d 76, 79 (4th Cir. 1965); Sease v. Astrue, Case No. 5:07cv00086, 2008 WL 4522476, at * 4 (W.D. Va. Oct. 6, 2008). Here, the ALJ's opinion demonstrates that the ALJ considered Plaintiff's receipt of unemployment benefits during the first three quarters of 2006 as simply one factor contributing to his determination, but that it, alone, was not determinative. (R. at 12-13.) As the ALJ held, while such evidence was not "indicative" of a person who was totally disabled for a continuous twelve month period, when combined with Plaintiff's work history during her alleged period of disability, it was still not conclusive evidence of SGA. (R. at 12-13.) Furthermore, the ALJ continued his analysis by reviewing each of the individual medical impairments alleged by Plaintiff and otherwise included in her corresponding medical records. After a thorough analysis of her impairments, medical records, and hearing testimony, the ALJ concluded that the Plaintiff was "in reasonably good health, and she is able to engage in activities of daily living with little or no

10

accommodations regarding her impairment - including raising two children on her own." (R. at 15.) Such circumstances, in combination with the fact that Plaintiff had worked in the recent past and had received unemployment benefits while looking for other work, supported the ALJ's conclusion that Plaintiff had not established that her impairments had prevented her from being able to work for a continuous 12-month period. (R. at 16.) The consideration of Plaintiff's work efforts and her receipt of unemployment benefits in conjunction with the totality of Plaintiff's circumstances was therefore proper.

**2.     The ALJ's decision to discount the Plaintiff's credibility was proper.**

Plaintiff argues that the ALJ improperly evaluated her credibility by failing to consider the totality of the record that, independent of Plaintiff's own evidence, included evidence of Plaintiff's pain levels, symptoms, and limitations. (Pl.'s Mem. at 20-23.) Specifically, Plaintiff argues that the ALJ did not properly consider all the evidence in pre-hearing questionnaires pertaining to Plaintiff's ability to operate a car, perform household chores, and engage in social activities. (Pl.'s Mem. at 20-22.) In addition, Plaintiff argues that her statements in pre-hearing questionnaires are consistent with her hearing testimony, and that her acknowledgment of some activity demonstrates she was not trying to misrepresent the severity of her condition. (Pl.'s Mem. at 23.)

In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig, 76 F.3d at 594; see also Social Security Ruling (SSR) 96-7p, 1996 WL 374186 (July 2, 1996); 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain, limitations, or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at

594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms, and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d at 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

The ALJ properly applied the Craig analysis in finding that the Plaintiff's "statements regarding the intensity, duration, and limiting effects of the alleged symptoms were not entirely credible." (R. at 15.) While the ALJ found at step one of the Craig analysis that Plaintiff had the severe impairment of vertigo, ulcerative colitis, arthritis, and obesity, he also concluded that there was no continuous twelve-month period in which these impairments "precluded the

12

claimant from engaging in any substantial gainful activity so as to meet the durational requirements for Social Security disability benefits." (R. At 13.)  In addition, in the second step of the Craig analysis, the ALJ determined that the record did not support Plaintiff's "allegations regarding the severity of her limitations." (R. at 15.)  Specifically, the ALJ noted that Plaintiff's "treatment record is not very extensive," and that the "records indicate that the claimant's treatment has generally been routine, conservative, and unremarkable." (R. at 15.)

At the hearing before the ALJ, Plaintiff testified that she suffered from vertigo "every day[,] [a]ll during the day," and that she could only drive a short distance due to the unpredictability of her condition. (R. at 190.)  Plaintiff also testified that she had been prescribed the medication Meclizine to address the dizzying effects of vertigo, but that she had not visited a doctor for over a year. (R. at 191.)  Plaintiff also testified that despite receiving medication for arthritis, she continued to suffer pain. (R. at 192.)  As a result of her arthritic condition, Plaintiff testified that she was stiff and sore every morning, and that she experienced problems holding objects. (R. at 192.)  Plaintiff also testified that the ulcerative colitis she suffered from caused her to relieve herself approximately six to seven times in an eight-hour period, with such episodes occurring twice a week. (R. at 193-94.)  Plaintiff also testified that while she went to the grocery store, her "daughter goes in and buys most of the [groceries]." (R. at 198.)  When asked about daily tasks, Plaintiff testified that she prepared meals and did housework. (R. at 198.)  However, Plaintiff also testified that such tasks took "awhile" to complete, and required regular breaks. (R. at 198.)

The ALJ found that Plaintiff's pre-hearing documents, including "multiple disability, function, and pain questionnaires," to be "partially consistent with her hearing testimony." (R. at 15.)  The ALJ was particularly concerned with a Function Report, dated April 14, 2006, in which

13

Plaintiff listed a variety of tasks she performed approximately four months after her alleged onset date.  (R. at 15, 89.)  In the form, Plaintiff listed a variety of activities she could perform, including waking up at 5:40 a.m., taking a shower, getting her daughters ready for school, preparing meals, driving a daughter to a bus stop, cleaning her house, and accompanying her daughter outside to play.  (R. at 89, 96.)  Plaintiff also listed more sedentary activities, such as sitting down to rest, watching TV, and reading.  (R. at 96)  In addition, Plaintiff confirmed that she took care of her two children by preparing meals, washing clothes, and helping with homework.  (R. at 90.)  Plaintiff also noted that she was "unable to do laundry or clean or do anything outdoors" on those days that she was in a lot of pain.  (R. at 91.)  Plaintiff also wrote about the pain she experienced in her hands, feet, legs, and arms.  (R. at 79.)  She cited "sitting or standing for a long period of time," and "lifting anything over twenty pounds" as causing her pain to worsen.  (R. at 79.)  However, on a Disability Report, dated April 19, 2007, Plaintiff only noted vertigo and arthritis as conditions that limited her ability to work in regard to which the vertigo made her unsteady, unable to think, nauseated, and unable to "drive anywhere because [she] is afraid of the dizziness coming on."  (R. at 63-64.)  In regard to her ability to engage in social activities, Plaintiff stated that she talked on the telephone, and attended cookouts "every once in a while."  (R. at 93.)

It is well established that a claimant's subjective allegations of pain are not, alone, conclusive evidence that the claimant is disabled.  See Mickles v. Shalala, 20 F.3d 918, 919 (4th Cir. 1994).  The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, the amount and degree, alleged by the claimant."  Craig, 76 F.3d at 591.

14

The ALJ articulated a number of reasons for not fully crediting Plaintiff's testimony regarding the limiting effects of her pain and symptoms.  The ALJ considered "the record as a whole," including Plaintiff's ability to "engage in activities of daily living with little or no accommodations regarding her impairment."  (R. at 15.)  Plaintiff reported that she drove short distances, did household chores, and prepared simple meals.  (R. at 89,96.)  As such, the ALJ noted that Plaintiff's complaints of vertigo did not prevent her from caring for her children and occasionally working outside of her home.  (R. at 13.)  Based on Plaintiff's limited treatment record, the ALJ found that Plaintiff was in "reasonably good health."  (R. at 13.)  For example, there are multiple entries in the record where doctors noted that Plaintiff's symptoms were caused by her failure to take medication for her ulcerative colitis or arthritis regularly, and that she missed scheduled colonoscopy and rheumatologist appointments. (R. at 139, 156, 178.)  Such evidence contravened her protestations of disabling limitations and pain.

It is clear that the evidence in the Record supports the ALJ's determination that Plaintiff's testimony regarding the extent and limiting effects of her pain were less than credible.  The ALJ performed a proper <u>Craig</u> analysis by considering the totality of factors, including medical records, pre-hearing questionnaires, and hearing testimony.  Accordingly, the Court recommends a finding that the ALJ's conclusions regarding Plaintiff's credibility are properly based on substantial evidence in the record.

**3.     The ALJ properly adopted the non-examining physician's assessment of Plaintiff's RFC consistent with the other treating, examining, or reviewing medical sources.**

Plaintiff argues that it was improper for the ALJ to only adopt the non-examining physician's assessment of Plaintiff's RFC.  (Pl.'s Mem. at 23.)  Initially, Plaintiff asserts that the non-examining physician did not take into account the medical records pertaining to Plaintiff's

manipulative restrictions due to "swelling in the knees and right wrist."  (Pl.'s Mem. at 23.)  In

addition, Plaintiff asserts that the non-examining physician did not consider any restrictions for

the "clearly well documented complaints of diarrhea and the repeated diagnosis of ulcerative

colitis."  (Pl.'s Mem. at 23.)  Finally, Plaintiff argues that the non-examining physician's

findings are lacking because he never examined Plaintiff, it is not clear which records he

reviewed, and, at that, he only referenced three records as having examined them.  (Pl.'s Mem. at

23.)

During the sequential analysis, when the ALJ determines whether the claimant has a

medically determinable severe impairment, or combination of impairments which would

significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ

must analyze the claimant's medical records that are provided and any medical evidence

resulting from consultative examinations or medical expert evaluations that have been

conducted.  See 20 C.F.R. § 416.912(f).  When the record contains a number of different medical

opinions, including those from the plaintiff's treating physicians, consultative examiners or other

sources that are consistent with each other, then the ALJ makes a determination based on that

evidence.  See 20 C.F.R. § 416.927(c)(2).  If, however, the medical opinions are inconsistent

internally with each other, or other evidence, the ALJ must evaluate the opinions and assign

them respective weight to properly analyze the evidence involved.  20 C.F.R. §§ 416.927(c)(2),

(d).  Under the applicable regulations and case law, a treating physician's opinion must be given

controlling weight if it is well supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with other substantial evidence in the record.

Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p.  However, the regulations do not

require that the ALJ accept opinions from a treating physician in every situation, e.g., when the

16

physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported.  Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005); see 20 C.F.R. § 404.1527(d)(3)-(4), (e).

   After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC.  20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1).  The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints.  In determining Plaintiff's RFC, the ALJ relied on a RFC assessment completed by a Dr. Chaplin at the request of the SSA.  (R. at 159-165.)  An ALJ is allowed to rely on an RFC assessment by someone such as Dr. Chaplin, based on his qualifications as a highly qualified state agency consultant, and as an expert in Social Security disability evaluation.  20 C.F.R. § 404.1527(f)(2)(i).  Dr. Chaplin's medical opinion is also entitled to the same deference as other medical opinions of Record.  20 C.F.R. § 404.1527(f)(2)(ii).  Moreover, an ALJ is allowed to rely on the RFC assessment done by a physician, regardless of whether the physician actually examined the patient, or based on the number of records he referenced as having reviewed.  (R. at 164.)  See 20 C.F.R. § 416.927(f).

   As with the consideration of a treating physician's medical opinion, an ALJ is allowed to rely on the opinion of a non-examining physician as long as it is consistent with the evidence of record.  See 20 C.F.R. § 416.927(c)(2); Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986); Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984).  In acknowledgment of the requirement, the ALJ here noted that "[n]o treating, examining, or other reviewing medical

source opined that the claimant was physically more limited than [Dr. Chaplin's findings]."  (R. at 16.)

Plaintiff argues that Dr. Chaplin should have selected a manipulative restriction due to the swelling of her knees and right wrist.  (Pl.'s Mem. at 23.)  However, it is evident that Dr. Chaplin included such conditions as part of his findings in making the disability determination. (R. at 164.)  For example, in the initial assessment at Boydton Medical Center ("Boydton") on January 25, 2005, Plaintiff was treated for "swelling of ankles and feet," which was "well controlled" by medication.  (R. at 139.)  In subsequent visits to Boydton, Plaintiff was prescribed medication for pain, stiffness, and swelling of the hands and feet.  (R. at 117, 136.)  On June 2, 2006, a Dr. Johri noted that Plaintiff had an appointment with a rheumatologist, and was wearing a splint.  (R. at 118.)  There was no other mention of joint pain as a result of arthritis until March 30, 2007, when Plaintiff visited Boydton complaining of pain in her wrist and fingers.  (R. at 178.)  However, she had not taken her anti-arthritis medication (Methotrexate) for approximately two weeks, and she had not visited her rheumatologist in several months.  (R. at 178)  Nevertheless, her rheumatologist (Dr. Crowder) responded by continuing to prescribe Methotrexate.  (R. at 178.)  Subsequent visits to Boydton lacked any mention of pain related to arthritis.  (R. at 171, 176.)  Instead, as with Plaintiff's visit with a Dr. Lenore on April 12, 2007, Plaintiff simply requested a refill of the Methotrexate prescription.  (R. at 171.)  Dr. Lenore also stated that although Plaintiff suffered from lack of sleep due to pain, she had not consulted the rheumatologist in several years.  (R. at 156.)

Dr. Chaplin's assessment is also supported by the Record in regard to Plaintiff's limitations due to ulcerative colitis and diarrhea.  Dr. Chaplin properly cited ulcerative colitis and "diarrhea mixed with blood," to support his conclusions regarding Plaintiff's RFC.  (R. at

164.)  It is also important to note that, based on Plaintiff's medical records, and the definition of ulcerative colitis, diarrhea is obviously a symptom of ulcerative colitis.  Therefore, when Dr. Chaplin repeatedly cited ulcerative colitis as a basis for determining Plaintiff's disability, he considered Plaintiff's diarrhea as synonymous with the effects of ulcerative colitis.  (R. at 164.)  Furthermore, before Plaintiff's alleged onset date, there are multiple entries in the medical records demonstrating that Plaintiff complained of diarrhea with bleeding as a symptom of ulcerative colitis, and that Plaintiff took separate medication (Asacol) to control the condition. (R. at 116, 132, 139.)  Although Plaintiff complained that the medication did not help her, upon more specific questioning, a Dr. Ashby noted that "she gets the med, take it for a period of time, usually 1 Rx and then is not able to afford another Rx so she has never really been on it regularly over the past several [years]."  (R. at 139.)  At the same time, Dr. Ashby noted that Plaintiff had endured two years without a repeat colonoscopy.  (R. at 139.)  Even though the progress notes for Boydton included the statement that Plaintiff could "not leave home for fear of soiling her clothing," it is unclear how long Plaintiff continued to take the medication after her visit with Dr. Ashby.  (R. at 142.)  On August 30, 2005, a Dr. Stenicka again noted that Plaintiff had not been taking her medication to control her ulcerative colitis.  (R. at 132.)

During 2006, treating physicians continued to note Plaintiff's complaints of ulcerative colitis with symptoms of diarrhea, accompanied by her failure to take the Asacol or to complete a repeat colonoscopy.  (R. at 126, 128.)  On March 15, 2006, a Dr. Tandel stated that Plaintiff had not been taking Asacol for the past few months, and found that this may be "the reasoning for the return of her symptoms."  (R. at 128.)  During subsequent medical appointments over the following months, Plaintiff did not complain about her ulcerative colitis or diarrhea.  (R. at 171,

176, 178.)  Then, in May and July of 2006, Plaintiff again complained of her condition, resulting in the treating doctors only prescribing Asacol again.  (R. at 117, 119.)

The ALJ properly relied upon Dr. Chaplin's assessment of Plaintiff's RFC as it was consistent with the medical opinions of record.  Although Dr. Chaplin's assessment was completed on October 13, 2006, his RFC determination, based on Plaintiff's medical record, was also confirmed by subsequent medical opinions of record.  (R. at 163.)  Most importantly, there was no medical opinion substantiating Plaintiff's testimony that she had to relieve herself some eight times per day.  The one progress note that stated that Plaintiff could not leave her home "for fear of soiling her clothing," was modified by repetitive medical opinions stating that Plaintiff's condition was worsened by her failure to take the prescribed medication.  Even if a medical opinion stated that Plaintiff would need to relieve herself frequently, an ALJ is not required to adopt such an isolated opinion regarding employment conditions.  Accordingly, the ALJ properly relied on the non-examining physician's assessment of Plaintiff's RFC in order to make his disability determination.

**4.     The ALJ considered all of Plaintiff's limitations in posing the hypothetical question to the Vocational Expert, and properly determined that Plaintiff could return to her past relevant work as a candy packer or clerical assistant**

Plaintiff argues the ALJ did not include all of Plaintiff's limitations in posing hypothetical questions to the VE, and thus his ultimate conclusion as to employability is flawed.  (Pl.'s Mem. at 24.)  Specifically, Plaintiff argues that the ALJ failed to consider the well-documented complaints of diarrhea, the effects of vertigo, or the manipulative restrictions she suffered due to joint pain and swelling in her hands and wrist in determining her RFC.  (Pl.'s Mem. at 24.)

At step three of the sequential analysis, but before deciding whether a claimant can perform past relevant work, the ALJ must determine the claimant's RFC.  20 C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(5)(i).  An ALJ first assesses the nature and extent of the claimant's limitations, and then determines the claimant's RFC for work activity on a regular and continuing basis.  See 20 C.F.R. § 404.1545(b).  Generally, it is the responsibility of the claimant to provide the evidence that the ALJ utilizes in making his RFC determination; however, before a determination is made that a claimant is not disabled, the ALJ is responsible for developing the claimant's complete medical history, including arranging for consultative examinations, if necessary.  See 20 C.F.R. § 404.1545(a)(3).  The ALJ's RFC determination must incorporate impairments supported by the objective medical evidence in the record and those based on the claimant's *credible* complaints.  See C.F.R. § 404.1545(a)(3) (emphasis added).

Here, the ALJ determined that the Plaintiff had the RFC to perform work at light exertional levels.  (R. at 16.)  Specifically, the ALJ found that Plaintiff could "lift or carry 20 pounds occasionally and 10 pounds frequently, stand or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday."  (R. at 16.)  In arriving at his conclusions, the ALJ conducted a thorough review of the medical records during the time period relevant to Plaintiff's disability claim.  (R. at 13-15.)  The ALJ considered Plaintiff's hearing testimony in which she stated that she could walk about fifty yards before sitting down, and that she could stand twenty minutes before sitting down.  (R. at 195.)  Plaintiff further testified that she could lift and carry no more than ten pounds, and had trouble carrying things, kneeling or bending, sitting, and holding things.  (R. at 196.)  The ALJ then considered the activities required by Plaintiff's past relevant work as actually performed by Plaintiff.  (R. at 200-207.)

Given the RFC analysis, it is clear that the ALJ's questions to the VE were appropriate. In questioning the VE, the ALJ attempted to determine whether Plaintiff, given her impairments, would nevertheless be able to return to her previous work as either a candy packer or a clerical assistant. (R. at 209-225.) The ALJ, consistent with the Dictionary of Occupational Titles, asked the VE to characterize Plaintiff's past work. (R. at 210-219.) Based on intermittent questioning of Plaintiff, and the analysis of the VE, the ALJ determined that Plaintiff's employment as a candy packer and clerical assistant was light, unskilled work. (R. at 210-219.) The ALJ then questioned the VE, based on the RFC determination, whether someone "who can do light work, lift and carry 20 pounds occasionally, 10 pounds frequently, stand or walk six hours in an eight-hour day, sit six hours in an eight-hour day, no climbing ladders, ropes, or scaffolds...[with] only occasional...postural activities, that is climbing stairs or ramps, balancing, stooping, kneeling, crouching, crawling" could perform Plaintiff's past work. (R. at 218.) In addition, the ALJ considered Plaintiff's limitations by asking the VE about positions that allow for a person to have more than two absences a month. (R. at 222.) The ALJ also eliminated jobs that included workplace hazards, such as Plaintiff's experience working as sewing machine operator. (R. at 217-219.) The VE stated in response that Plaintiff could perform her past work as a candy packer or clerical assistant as generally performed in the national economy. (R. at 219.) The ALJ further inquired of the VE whether Plaintiff could perform other jobs "that exist in significant numbers in the regional and national economy at the sedentary level." (R. at 220.) Based on the RFC determination, the VE identified several additional positions that Plaintiff could perform at the sedentary level, while avoiding workplace hazards. (R. at 220-21.)

Plaintiff additionally asserts that it was error for the ALJ to conclude that she could perform her past relevant work as a candy wrapper. (Pl.'s Mem. at 25.) Specifically, Plaintiff

contends that the ALJ improperly identified work as a candy wrapper as a light exertional job. (Pl.'s Mem. at 25.)  Plaintiff describes the work of a candy wrapper as requiring the lifting of more than twenty pounds, which conflicted with the ALJ's RFC limiting her lifting ability to twenty pounds occasionally, and no involvement with machinery.  (Pl.'s Mem. at 26.)  Plaintiff also argues that the ALJ's finding that she could perform her past relevant work as a staple puller was irrational because it was only an unsuccessful work attempt.  (Pl.'s Mem. at 26.)

The ALJ determined that Plaintiff could perform past work as a candy packer, which was categorized as exertionally medium unskilled work, but which Plaintiff actually performed at a light exertional level.  (R. at 16.)  The determination that Plaintiff's work as a candy packer was light, unskilled work, was supported by Plaintiff's testimony that the most she had to lift in that position was twenty pounds at a time.  (R. at 212.)  The VE also confirmed that such work could be performed at the light exertional level, as opposed to the medium level, based on the definition of the position in the Dictionary of Occupational Titles.  (R. at 210-11.) Furthermore, Plaintiff testified that she worked in the position for ten years and, therefore, it was properly considered by the ALJ as past SGA to which the Plaintiff could return.  (R. at 188.)

The ALJ also concluded that Plaintiff could perform past work as a clerical assistant which was classified as sedentary, semi-skilled worker, but which Plaintiff performed at the unskilled level.  (R. at 16.)  The Plaintiff testified that she performed such work full time for approximately five months, and although she asserts that it was not properly considered because it was an unsuccessful work attempt, Plaintiff failed to produce evidence or raise the argument at the hearing before the ALJ.  As it is Plaintiff's burden to demonstrate that any past employment qualified as an unsuccessful work attempt, and no evidence was produced by Plaintiff at the hearing, the argument is without merit.  See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993);

23

Scott v. Commissioner of Social Security, 899 F. Supp. 275, 277 (S.D.W.Va. 1995).

Furthermore, if Plaintiff's clerical work was improperly considered, the ALJ properly

determined that Plaintiff had not met the durational requirements under the Act, in any event,

and, alternatively, that she was able to perform her past work as a candy packer; thus, Plaintiff's

argument regarding her clerical work experience is rendered moot.

A review of the Record demonstrates that the ALJ's analysis of Plaintiff's RFC and his

questions to the VE were proper.  Accordingly, the Court recommends a finding that there is

substantial evidence in the Record to support the ALJ's conclusion that Plaintiff was able to

return to her past relevant work, and therefore was not disabled and entitled to benefits.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's

motion for summary judgment (docket entry no. 14) and motion for remand (docket entry no. 15)

be DENIED; that Defendant's motion for summary judgment (docket entry no. 17) be

GRANTED; and, that the final decision of the Commission be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable

James R. Spencer and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and**

**recommendations of the Magistrate Judge contained in the foregoing report within ten (10)**

**days after being served with a copy of this report may result in the waiver of any right to a**

***de novo* review of the determinations contained in the report and such failure shall bar you**

**from attacking on appeal the findings and conclusions accepted and adopted by the District**

**Judge except upon grounds of plain error.**

_____/S/_____
Dennis W. Dohnal
United States Magistrate Judge

Dated:  September 3, 2009